## Case No. 1,800.

### BRAGG v. LORIO et al.

[1 Woods, 209;[1] 4 Chi. Leg. News, 183.]

Circuit Court, D. Louisiana.   Nov. Term, 1871.

JUDGMENT—COLLATERAL ATTACK—CIRCUIT COURTS —JURISDICTION — CONFISCATION—CLERK OF THE COURT — AUTHORITY OF DEPUTY — REBELLION— AMNESTY PROCLAMATION.

1. In an action to recover possession of and establish title to real estate, when the defendant relies upon title derived through confiscation proceedings, no error or irregularity in such proceedings can be regarded which does not go to show want of jurisdiction in the court which rendered the judgment condemning the property. The judgment is binding until reversed in a direct proceeding.

2. A seizure of property under the confiscation acts, made by the marshal, upon the written order of the United States attorney, is sufficient to give the court jurisdiction of the res.

3. Under the act of March 3, 1821 (3 Stat. 643), the deputy clerk of the U. S. district court for Louisiana was authorized to sign process in his own name as such deputy, and a venditioni exponas so signed and in other respects regular, and under the seal of the court, is valid.

[Cited in Griswold v. Connolly, Case No. 5,-833.]

4. The amnesty proclamation of the president, of July 4, 1868, did not have the effect to restore to the party out of whom before that time the title had been divested, property condemned, and the title to which was vested in the United States, by confiscation proceedings.

[See, generally, as to the effect of the proclamation, In re Davis. Case No. 3,621a; Carlisle v. U. S., 16 Wall. (83 U. S.) 147; Pargoud v. U. S., 13 Wall. (80 U. S.) 156; Armstrong v. U. S., Id. 154; Gay's Gold, Id. 358; Knote v. U. S., 95 U. S. 152; Witkowski v. U. S., 7 Ct. Cl. 393; Waring v. U. S., Id. 501; Meldrim v. U. S., Id. 595; Scott v. U. S., 8 Ct. Cl. 457.]

[At law. Action by Braxton Bragg against Lorio and others to recover possession of land.] This cause was submitted to the court upon the issues of law and of fact,

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

the parties having waived the intervention of a jury. [Judgment for defendants.]

Allan C. Story, for plaintiff.
C. Roselius, Alfred Phillips, and Belcher & Beattie, for defendants.

WOODS, Circuit Judge. The plaintiff brings his action to establish his title to and recover possession of a certain plantation situate in the parish of Lafourche, in the state of Louisiana, known as the "Greenwood" plantation, of which he avers he is seized as of an estate in fee simple, and whereof for many years prior to the 3d day of January, 1866, he was in possession. He alleges that on the day last named, the defendants wrongfully and forcibly ejected him from the plantation and took possession of the same, which they still hold.

The defendants by way of defense set up title in themselves, claiming under a sale made by the United States' marshal on the 3d of January, 1866, by virtue of a writ of venditioni exponas issued from the district court of the United States for the eastern district of Lousiana, in the suit of U. S. v. The Greenwood Plantation (the property of Braxton Bragg). This was a proceeding to confiscate said plantation as enemies' property, commenced and concluded under the act of congress, approved July 17, 1862, entitled "An act to suppress insurrection, to punish treason and rebellion, to seize and confiscate the property of rebels, and for other purposes." 12 Stat. 590.

It is admitted that prior to the 3d of January, 1866, Bragg was seized and in possession of the lands sued for, and that he is entitled to recover unless his title has been divested by said proceedings and sale. It is well settled that irregularities in the confiscation procedings, mere errors of law, cannot be taken advantage of in this collateral proceeding. No error can be regarded here that does not go to the extent of showing want of jurisdiction in the court which rendered the judgment condemning the property. Cooper v. Reynolds, 10 Wall. [77 U. S.] 308; Tyler v. Defrees, 11 Wall. [78 U. S.] 344. But plaintiff avers that the proceedings were so defective that the court acquired no jurisdiction over the property, and therefore the decree of condemnation and the marshal's sale and deed are absolutely void. The defendants claim that the court did acquire jurisdiction, and having jurisdiction, the proceedings are valid until reversed, and that the sale and deed of the marshal convey title. This presents one of the questions for our determination.

"When we are called upon to sit in review on the judicial proceedings of the inferior courts in the enforcement of the confiscation statutes, we are to be governed by the reasonable and sound rules applicable to analogous cases in the courts, and not by a system of procedure so captious, so narrow, so

difficult to understand or to execute, as to amount to a nullification of the statute." Tyler v. Defrees, 11 Wall. [78 U. S.] 345.

The record in this case shows that on September 11, 1865, the property in question was seized by the U. S. marshal under written authority of the district attorney, as forfeited to the United States, and that the property was within the jurisdiction of the court. That on the 12th of September, 1865, a libel was filed reciting the seizure and praying the condemnation of the property, and that on the same day a writ of seizin was issued to the marshal, directing him to seize and take in possession the property aforesaid, which was returned October 2, 1865, with the indorsement that he had seized the property in the hands of Thomas W. Conway, assistant commissioner of the freedman's bureau, and served notice of seizure personally on said Conway, etc. The record, in our opinion, amply shows a seizure, sufficient to give the court jurisdiction. In the case of Tyler v. Defrees, supra, the only seizure was the one made by the marshal on the order of the district attorney, preliminary to the filing of the libel. The record showed no other. Yet in that case it was held that the court acquired jurisdiction. The court say: "The proceeding inaugurated by the district attorney is designed to bring the property into court. It can have no other purpose or end, unless released by his order. The district attorney and marshal are both officers of the court, and for that reason are selected to institute the proceedings by which the power of the court is called into exercise. When, therefore, the property is, in the course of this proceeding, seized by the marshal, and when, with the filing of the libel, all that has been done is brought before the court, and it adopts and recognizes the seizure, the property is held by him subject to the order of the court, and is under its control, and no second seizure by the same officers can be necessary." So in Cooper v. Reynolds, 10 Wall. [77 U. S.] 309, the court speaking of the various modes of acquiring jurisdiction, said: "While the general rule in regard to jurisdiction in rem requires the actual seizure and possession of the res by the officer of the court, such jurisdiction may be acquired by acts of equivalent import, and which stand for and represent the dominion of the court over the thing, and in effect subject it to the control of the court. Among this latter class is the levy of a writ of attachment or seizure of real estate, which being incapable of removal, and being within the territorial jurisdiction of the court, is for all practical purposes brought under the jurisdiction of the court by the officer's levy of the writ and return of that fact. In this case we have not only a preliminary seizure, which the supreme court in Tyler v. Defrees held to be sufficient to give the court jurisdiction, but a subsequent seizure

made after the filing of the libel, by order of court, and the return of the officer showing the seizure. Beyond doubt, therefore, the court acquired jurisdiction.

The plaintiff has pointed out what he conceives to be numerous irregularities and errors of law in the subsequent proceedings, but the fact that the court had jurisdiction, being established, these do not render void the decree of the court. It is binding until reversed in a direct proceeding, and cannot be impeached collaterally. Exception is taken to the writ of venditioni, under which the marshal made the sale to the defendants, and it is claimed that this writ is void, and conferred no authority upon the marshal, and that his proceedings and sale under it were void and conveyed no title. An inspection of the writ shows that it is in the name of the president of the United States, that it bears test of the judge, and is under the seal of the court. It is however signed by W. S. Benedict, deputy clerk, and not by the clerk himself. This fact, it is claimed, avoids the writ. By the act of March 3, 1821 (3 Stat. 643), the clerk of the district court of the United States for the district of Louisiana is authorized "to appoint a deputy to aid him in the discharge of the duties of his office, for whose acts the clerk shall in all respects be liable." We think it clear that the deputy appointed by virtue of this act may do any act which the clerk is authorized to do. Among other acts he may sign process in his own name. A narrower construction of the statute would render it vain and useless. Without the aid of this statute the clerk may and must perform a large part of his duties by other hands. Provided they are done under his authority and by his direction, they are valid. But there are certain acts which must be done by the clerk in his own name. To enable them to be done by the deputy was the purpose of the statute. The clerk is made responsible for these acts of his deputy on his official bond by the express words of the law. But granting that the writ of venditioni exponas was void, and the sale under it void, the only result is that the record shows the title still to be in the United States, by the decree of confiscation. In actions of ejectment the plaintiff recovers on the strength of his own title. The defendant may successfully defend by showing title out of the plaintiff. So if we hold that the defendants took no title by the confiscation proceedings that does not help the plaintiff's case, for if the court had jurisdiction his title was divested and vested in the United States by the decree of November 23, 1865, where the title still remains.

But the plaintiff further insists that under the proclamation of amnesty and pardon issued by the president on July 4, 1868, he was restored to his rights of property, and as the sale under the proceedings for confiscation did not take place until after the date of

said proclamation, such sale was void and conveyed no title. We do not think the effect claimed for the proclamation by plaintiff can be attributed to it, but the obvious answer to this claim is that the property was condemned and the title divested out of plaintiff and vested in the United States by the decree of the court, on the 23d of November, 1865, long before the date of the proclamation, and the proclamation expressly excepts from its effects any "property of which any person may have been legally divested under the laws of the United States." Having already held that by the proceedings for confiscation the plaintiff was legally divested of his property until the decree of the court shall be reversed by a direct proceeding in error, we are of opinion that the plaintiff can take no benefit from the proclamation in this case. The court therefore finds for the defendants upon the issues of fact, and orders that judgment be entered accordingly.